ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
| ] This disciplinary matter arises from a motion and rule to revoke probation filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Walter W. Gerhardt, an attorney licensed to practice law in Louisiana, for his violation of additional Rules of Professional Conduct while on court-ordered probation imposed in In re: Gerhardt, 11-0687 (La.4/29/11), 64 So.3d 203 (“Gerhardt I ”), as well as for his failure to comply with the conditions of probation imposed in that matter.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The record in Gerhardt I demonstrated that respondent failed to act with diligence *1170 and failed to communicate with his clients in two separate matters. In 2010, two counts of formal charges were filed against respondent by the ODC. Prior to a hearing on the formal charges, respondent and the ODC submitted a joint petition for consent discipline, proposing that respondent be suspended for one year and one day, fully deferred, subject to his successful completion of a two-year period of supervised probation governed by the following conditions:
1. Respondent shall fully cooperate and comply with the requirements of a plan of probation which is to include periodic reviews of procedures to insure adequate communication with clients and the exercise |2of reasonable diligence in the completion of matters for which respondent has been engaged;
2. Within twelve months of the order of the court imposing discipline, respondent shall enroll in and successfully complete the Louisiana State Bar Association’s Ethics School;
3. Respondent shall fully' cooperate with the ODC in any future disciplinary investigations;
4. Respondent shall not violate the Rules of Professional Conduct in the future; and
5. Respondent shall pay the costs of the disciplinary proceeding in full within thirty days.
On April 29, 2011, we accepted the petition for consent discipline in Gerhardt I. Our order stated in pertinent part as follows:
IT IS ORDERED that the Petition for Consent Discipline be accepted and that Walter W. Gerhardt, Louisiana Bar Roll number 20827, be suspended from the practice of law for a period of one year and one day. This suspension shall be deferred in its entirety, subject to respondent’s successful completion of a two-year period of supervised probation governed by the terms and conditions set forth in the Petition for Consent Discipline. The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. [Emphasis added.]
Following this ruling, respondent entered into a probation monitoring plan and the adjudicative committee of the disciplinary board appointed Shreveport attorney Brian A. Homza to serve as respondent’s probation monitor. The probation plan provided that respondent “is on probation for two years commencing April 29, 2011.”
In September 2011, Betty Jo Fountain filed a complaint against respondent with the ODC. Ms. Fountain had previously filed a disciplinary complaint alleging |sthat respondent had not drafted and filed a qualified domestic relations order (QDRO) providing for the equal division of her former husband’s pension benefits, and this complaint was included in the formal charges filed against respondent which were resolved by way of the consent discipline in Gerhardt I. In the consent discipline proceedings, respondent represented that he was in the process of completing the QDRO; in fact, however, he failed to do so. He also failed to communicate with Ms. Fountain and otherwise misrepresented to her the progress being made in the matter on her behalf, or alternatively, offered false explanations for why he was unable to successfully complete the task for which he had been retained.
*1171 In a separate matter, Gary Steven Brown filed a complaint against respondent with the ODC on September 26, 2011. Mr. Brown and his sister, Patricia Hill, retained respondent in November 2010 to assist them in obtaining the interdiction of their 90-year old aunt, Lorene Caldwell. Respondent accepted the representation knowing that time was of the essence because Mrs. Caldwell, who was in extremely poor health, was being evicted from the nursing home where she resided and access was needed to her funds to properly provide for her care.[1] Mr. Brown and Ms. Hill paid respondent $7,500 to handle the matter, plus court costs of $500. In December 2010, respondent filed a petition seeking Mrs. Caldwell’s interdiction, but he failed to timely file the necessary pleadings to apply for an order appointing an attorney to represent the interests of the interdict. He also failed to communicate with his clients and refused to see them when they traveled to his office to meet him in September 2011.[2]
14After receiving the complaint from his clients, respondent filed a motion on September 27, 2011 seeking to have an attorney appointed to represent Mrs. Caldwell’s interests. Unfortunately, respondent’s actions came too late to help Mrs. Caldwell. She died in October 2011, having never been interdicted and deprived of the medical care her personal savings could have provided. As of February 2012, respondent had refunded only $8,000 of the original fee paid by Mr. Brown and Ms. Hill, notwithstanding his clients’ request for a refund of the entire fee. Respondent did not place the disputed portion of the fee into his client trust account pending resolution of the dispute as required by Rule 1.5(f)(5).
DISCIPLINARY PROCEEDINGS

Motion and Rule to Revoke Probation

On February 17, 2012, the ODC filed a motion and rule to revoke respondent’s probation. The ODC premised its motion and rule on respondent’s violation of the Rules of Professional Conduct in the Fountain and Caldwell matters, specifically Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(5) (failure to hold disputed funds in trust), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. In addition, the ODC alleged that respondent had failed to comply with the conditions of his probation in Gerhardt I, in that he had failed to enroll in and successfully complete the Louisiana State Bar Association’s (“LSBA”) Ethics School within twelve months of the court’s order accepting the petition for consent discipline. The ODC also noted that respondent had not met his obligations under the probation monitoring plan, “nor has Respondent demonstrated any meaningful | .-.effort towards compliance.” [3] Accordingly, the ODC prayed for *1172 revocation of respondent’s probation and the imposition of the previously deferred one year and one day suspension.
Respondent, through counsel, filed an answer to the motion and rule to revoke probation, essentially denying any misconduct. In the Fountain matter, respondent stated that he had prepared the QDRO and submitted it on two occasions; however, it had not been approved by the employer. Respondent maintained that he was continuing, without the payment of any additional fee, to submit a QDRO acceptable to all parties, but complained that it had become increasingly difficult to represent Ms. Fountain, “who is unsupportive of his work and who continues to report him in spite of his efforts.” In the Caldwell matter, respondent admitted that he did not file the interdiction documents on a timely basis, and that he did not refund the entire fee paid by his clients. Respondent maintained that he had earned some of the fee in preparing the documents and noted that his clients never complained the partial refund was unreasonable. Nevertheless, respondent represented that “given recent conversations with the Office of Disciplinary Counsel, he is in the process of refunding the entire fee.” Finally, as to the allegations that he had not complied with the conditions of probation imposed in Gerhardt I, respondent suggested that he had only recently become aware that the LSBA’s Ethics School is offered just twice a year. He also denied that he had failed to cooperate in the implementation of his probation monitoring plan. Respondent therefore urged the disciplinary board to deny the ODC’s motion to revoke probation, or alternatively, to extend the term of his probation and add additional conditions thereof.

16Hearing on Revocation of Probation

This matter proceeded to a hearing before an adjudicative panel of the disciplinary board on April 12, 2012. Respondent testified at the hearing on his own behalf and on cross-examination by the ODC. The ODC called the following witnesses to testify in person before the hearing committee: Betty Jo Fountain; her former husband, Ronald Fountain; and Brian Homza, respondent’s probation monitor. Gary Steven Brown gave a telephone deposition which tracks the underlying facts set forth above regarding the failed effort to obtain the interdiction of Lorene Caldwell. The parties stipulated that Mr. Brown’s sister, Patricia Hill, if called to testify, would give testimony substantially similar to that of Mr. Brown.
In his testimony on cross-examination, respondent acknowledged that he did not contact the LSBA regarding his attendance at Ethics School until March 29, 2012, some six weeks after he was served with the ODC’s motion to revoke probation. He further acknowledged that he was not in compliance with the court’s April 29, 2011 order in Gerhardt I requiring him to complete Ethics School within one year. Respondent testified that he has recently made arrangements to attend the Ethics School session scheduled on June 22, 2012.
Turning to the Caldwell matter, respondent admitted that he has no explanation for his nearly one-year delay in filing the pleadings necessary to complete the interdiction of Mrs. Caldwell.[4] He therefore acknowledged that he violated the Rules of *1173 Professional Conduct in handling that matter, notwithstanding that the conditions of his probation in Gerhardt I required him to refrain from any additional ethical violations. On March 29, 2012, respondent issued a cashier’s check to Mr. Brown in the amount of $4,500, representing a refund of the remainder of the attorney’s fee he was paid in the interdiction matter.
17Concerning the Fountain matter, respondent acknowledged that he was retained in November 2003 to obtain a QDRO establishing Ms. Fountain’s claim to half of her former husband’s pension benefits from his employer, AutoZone, Inc. Respondent did not submit any documents to AutoZone or to Mercer, the QDRO administrator for AutoZone, until September 2009, when he sent a draft (unexecuted) QDRO to AutoZone for review. In November 2009, Mercer rejected the draft QDRO as not qualified, and AutoZone sent respondent a checklist of items to be corrected as well as a sample generic QDRO containing pre-approved language. However, as of April 2011, when this court accepted the petition for consent discipline in Gerhardt /, respondent had not revised the QDRO for review by Mercer, notwithstanding his representation in the petition for consent discipline that he was “continuing his efforts to complete” the QDRO. He also had not been in contact with either Mercer or AutoZone by telephone or email, despite his representations to Ms. Fountain to that effect.
By the summer of 2011, Ms. Fountain had become extremely frustrated with respondent’s lack of effort and the fact that the QDRO had not been approved. In September 2011, respondent finally revised the draft of the QDRO and mailed it to AutoZone. However, the QDRO was still not qualified, and indeed, Ms. Angela Beaver of Mercer told Ms. Fountain that after reviewing respondent’s work product, “[t]here’s so much missing and/or wrong that I don’t even know where to start.” In response, respondent claimed that he did not know what to correct because Auto-Zone was “not helpful” and had refused to review a draft of the QDRO. Ms. Beaver assured both respondent and Ms. Fountain by e-mail that this was not the case, and that she would prefer to review a draft so that the QDRO would be in the correct form before it was sent to the court for a judge’s signature. Respondent testified that he did not recall receiving this communication from Ms. Beaver.
| sIn late December 2011, Leslie Schiff, respondent’s counsel in this proceeding, contacted Ms. Beaver by telephone to advise her that respondent would be sending her another draft of the QDRO for review. Ms. Beaver received the draft on January 4, 2012, but by letter dated January 25, 2012, Mercer notified respondent that the draft was not qualified as written “because certain required provisions are either missing or unclear.” Included with Mercer’s letter to respondent was another copy of a checklist of items to be corrected as well as a model QDRO. On March 6, 2012, respondent received a letter from Mercer acknowledging receipt of a revised QDRO; on April 2, 2012, this version of the QDRO was accepted by Mercer as qualified. At the April 12th hearing in this matter, both Mr. Fountain and Ms. Fountain agreed to sign the approved QDRO, and respondent committed to filing the signed document with the court “tomorrow.” [5]
Ms. Fountain testified that respondent informed her in 2003 that the QDRO was *1174 completed; however, in July 2009, when her former husband turned 65 and attempted to draw his pension benefits from AutoZone, he was informed that nothing was on file. Thereafter, she said, respondent repeatedly refused to respond to her requests for information as to the status of the matter, or to send her copies of the documents he claimed to have drafted and sent to AutoZone and/or Mercer. Ms. Fountain also noted that respondent had only recently begun taking steps to finalize the QDRO. Ms. Fountain testified that both she and her former husband were entitled to receive approximately $100 per month from his AutoZone pension, and that respondent’s delay in finalizing the QDRO had cost them more than $6,000. For his part, Mr. Fountain testified that not having access to these funds for the last three years has been a financial hardship in his retirement.
| ¡,!Disciplinary Board Recommendation
In its report, the disciplinary board found that respondent failed to adequately communicate with Ms. Fountain or exercise reasonable diligence with respect to her QDRO, which demonstrates continued misconduct and a failure to comply with the terms and conditions of probation. The board noted that although respondent was sanctioned on April 29, 2011 for his lack of diligence in handling the QDRO, he took no further action in the matter until August or September 2011, when Ms. Fountain threatened to file another disciplinary complaint against him. Moreover, respondent falsely advised Ms. Fountain in October 2011 that he had not finished the QDRO because he was “still having problems” with AutoZone. The board found it was not until January of 2012 that respondent began acting in a “diligent” manner, and noted that he did not receive approval from Mercer for the QDRO until April 2, 2012.
The board also found that respondent violated the conditions of his probation by failing to enroll in and successfully complete the LSBA’s Ethics School within twelve months of the April 29, 2011 order in Gerhardt I. Respondent did not contact the LSBA regarding Ethics School until March 29, 2012, and he will not successfully complete the program until June 22, 2012. Therefore, the board concluded that respondent failed to comply with the Ethics School condition of his probation.
As to the Caldwell matter, the board determined that the ODC presented sufficient evidence of additional misconduct by respondent during his probation. Respondent failed to act with reasonable diligence in handling the interdiction of Mrs. Caldwell, causing significant harm to Mrs. Caldwell as well as to his clients. In addition, respondent failed to communicate with his clients and failed to promptly refund the attorney’s fee he was paid. Prior to the filing of the ODC’s motion to revoke probation, respondent had refunded only $3,000 of the fee, | inclaiming he had earned the remaining amount. Respondent did not place the disputed portion of the fee into his client trust account pending a resolution of the dispute, and did not refund the remainder of the fee until March 2012. Finally, the board found the record supports a finding that respondent made misrepresentations to the ODC and to his clients about the status of the interdiction.[6]
*1175 Based on the above findings, the board concluded that respondent failed to comply with the terms and conditions of his probation and has engaged in additional misconduct, both of which are grounds for the revocation of his probation. Accordingly, the board recommended that respondent’s probation be revoked and that he be suspended from the practice of law for one year and one day. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Respondent filed an objection to the disciplinary board’s recommendation. He asserted that the revocation of probation, and the imposition of the previously deferred suspension, is “too severe considering the initial misconduct, his consent discipline, and his inadvertent failure to comply with the conditions of his probation.” The ODC replied to respondent’s objection and urged the court to accept the board’s recommendation.
DISCUSSION
A review of the record reveals that respondent neglected the Fountain and Caldwell matters and failed to communicate with his clients. The substantial delay | n occasioned by respondent in handling Ms. Fountain’s QDRO and Mrs. Caldwell’s interdiction proceeding caused actual and substantial harm to the individuals involved. Respondent also failed to comply with the conditions of probation in Ger-hardt I, in that he failed to successfully complete Ethics School within twelve months of the order of discipline, and he has failed to meet the obligations of his probation monitoring plan. These facts amply support the disciplinary board’s conclusion that the revocation of respondent’s probation and imposition of the deferred one year and one day suspension is warranted.
Therefore, we will revoke respondent’s probation and make the previously deferred one year and one day suspension executory.
DECREE
For the reasons assigned, respondent’s probation is revoked and the previously deferred one year and one day suspension imposed in In re: Gerhardt, 11-0687 (La.4/29/11), 64 So.3d 203, is hereby made immediately executory. All costs and expenses in the matter are assessed against respondent, Walter W. Gerhardt, Louisiana Bar Roll number 20827, in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

.Mrs. Caldwell had sufficient funds in her bank account to pay for the expenses of her care; however, the relative who had signature authority on the account had refused to release any funds to the nursing home. As a result, Ms. Hill, who is 70 years old and not in the best of health herself, had assumed the responsibility for caring for Mrs. Caldwell in her home.

. Mr. Brown resides in Flint, Michigan and had flown to Louisiana to meet with respondent when he could not communicate with him by telephone. Ms. Hill resides in north Louisiana, in the town of Ida.

. For example, respondent’s probation monitoring plan required him to obtain the assistance of the LSBA’s Loss Prevention Counsel and Practice Assistance Counsel "in the creation of proper law office management pro *1172 grams” and to participate in a law office management practice seminar. However, respondent had not complied with either of these requirements as of April 12, 2012, when the hearing was held in this matter.

. In his testimony on direct, respondent attributed the delay to the "lack of a good diary system” in his office; however, he testified that he has since "cured” this problem with the assistance of his probation monitor.

. On May 7, 2012, the disciplinary board received from respondent's counsel a certified copy of the executed QDRO for inclusion in the record. The QDRO was signed by the district judge on April 17, 2012, and counsel represented that it "has been mailed to the administrator for the AutoZone retirement plan.”

. In a letter dated August 8, 2011, respondent indicated that he was in the process of having an attorney appointed to represent Mrs. Caldwell’s interest; however, nothing more had been accomplished by the time the disciplinary complaint was filed on September 26, 2011. As previously stated, respondent did not file the motion for the appointment of an attorney until September 27, 2011.
The board also noted that in October 2011, respondent informed the ODC in response to Mr. Brown’s complaint that there had simply *1175 been a "misunderstanding” which had been resolved, and that the matter was moving forward to everyone's satisfaction. This was clearly not the case. On November 7, 2011, a year after he was hired by Mr. Brown and Ms. Hill to expedite the interdiction of Mrs. Caldwell, respondent informed the ODC that she had died.